IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PAUL CAPUTO,

    Plaintiff,

vs.                                                                         No. CIV 05-321 JB/DJS

RIO RANCHO POLICE DEPARTMENT,
LEMUEL MARTINEZ, OFFICER J. MELTON,
MICHAEL BAKER, Chief of Police,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant Lemuel Martinez's Motion to Dismiss and Supporting Memorandum ("Motion to Dismiss"), filed November 29, 2005 (Doc. 24). The Court held a hearing on this motion on January 24, 2006. The primary issue is whether Martinez enjoys absolute immunity as a prosecutor. Because the Court concludes that the allegations, taken as true, do not assert that Martinez was acting outside the scope of his function as a prosecutor, the Court will grant the motion.

**FACTUAL BACKGROUND**

The Court will accept, as it must, the facts in the complaint as true for purposes of deciding the Motion to Dismiss.

Plaintiff Paul Caputo is a retired officer of the Rio Rancho Police Department, and at the time of the incidents alleged, he was a reserve officer for the Sandoval County Sheriff's Department. See Complaint ¶¶ 8-9, at 2, filed March 24, 2005 (Doc. 1). On or about November 6, 2003, Caputo stopped a car that was speeding and was being driven recklessly in front of his home. See id. ¶ 10,

at 2. After stopping the car, he asked the young men in the car to slow down so as not to endanger the lives of the neighborhood's residents. See id.

Several weeks later, Defendant Police Chief Michael Baker called Caputo into the police station and served him with a search warrant. See id. ¶ 12, at 3. Caputo alleges that, without authority to do so, Rio Rancho Police Officer J. Melton confiscated his wallet, retired officer I.D., and badge. See id.

Before receiving any criminal complaint, Caputo contacted Martinez, Sandoval County's District Attorney, and asked him if he could look into the incident. See id. ¶ 13, at 3. Martinez told him he would, but did not. See id. ¶¶ 13-14, at 3.

Several weeks after he went to the police station, Caputo was served with a Criminal Summons for two counts of impersonating a police officer – one count for each occupant of the stopped vehicle – in violation of § 30-27-2.1, NMSA 1978, as amended, and two felony counts of false imprisonment in violation of § 30-4-3, NMSA 1978, as amended. See Complaint ¶ 15, at 3-4. Melton had signed the Complaint. See id. Caputo contends that the charges never should have been brought, and they were eventually dismissed. See id. ¶ 16, at 4.

Caputo alleges that Martinez threatened to reinstate Caputo's felony charges if Caputo did not actively campaign for Martinez' re-election to the District Attorney's Office. See id. ¶ 18, at 4. Later, Caputo saw Martinez at the bagel shop in Rio Rancho. See id. ¶ 20, at 4. Martinez told Caputo that he must introduce Martinez to his friends at the table to help Martinez with his political campaign. See id.

Caputo contends that the allegedly unwarranted felony charges are still on his record and that he reasonably fears that, if he does something "wrong" in the Defendants' eyes, the charges will be

reinstated.  See id. ¶¶ 18-19, at 4.  Caputo asserts that he was prosecuted because of his well-known political aspirations and his intention to run for Rio Rancho City Council.  See id. ¶ 21, at 4.

## PROCEDURAL BACKGROUND

Caputo's claims against Martinez are limited, because most of the allegations concern the Rio Rancho Police Defendants.  Count II, however, reveals several allegations against Martinez.  In Count II, Caputo contends that Martinez "encouraged the continued prosecution against the Plaintiff even though [he] knew or should have known that his actions were within the law."  Id. ¶ 30, at 6.  Caputo further alleges that Martinez "intentionally provided false information to the magistrate court."  Id. ¶ 31, at 6.  Finally, Caputo asserts that the "Defendants' motivations in prosecuting [him] were improper."  Id. ¶ 34, at 6.  Caputo's claims against Rio Rancho and Melton include unlawful seizure and malicious prosecution, both arising from the same series of events.  See id. ¶ 28, at 5.  Martinez denies Caputo's allegations of any illegal conduct.  See Motion to Dismiss at 3.

Martinez moves the Court, pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss with prejudice Caputo's Complaint against him on the basis of prosecutorial immunity.  See id. at 1.  Caputo opposes Martinez' motion to dismiss based on prosecutorial immunity, arguing that Martinez committed the alleged wrongful acts while acting outside of his function as a prosecutor.  See generally Plaintiff's Response in Opposition to Defendant Martinez' Motion to Dismiss ("Response"), filed November 29, 2005 (Doc. 24).

## LEGAL PRINCIPLES FOR ABSOLUTE PROSECUTORIAL IMMUNITY

A prosecutor acting within the scope of his prosecutorial function enjoys absolute immunity from civil suits.  See Imbler v. Pachtman, 424 U.S. 409, 420 (1976).  In evaluating an assertion of absolute immunity, the Supreme Court of the United States applies a functional approach, "focus[ing]

on the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful." Buckley v. Fitzsimmons, 509 U.S. 259, 271 (1993). When a prosecutor is acting as an advocate, and performing duties intimately associated with the judicial process, immunity attaches and bars any civil suit against him. See Imbler v. Pachtman, 424 U.S. at 431; Buckley v. Fitzsimmons, 509 U.S. at 272-273. The Supreme Court has stated that activities, such as deciding whether to file charges, initiating and pursuing prosecution, or carrying out other similar activities involving professional judgment, are in the nature of advocacy, and are therefore protected by absolute immunity. See Kalina v. Fletcher, 522 U.S. 118, 126 (1997); Buckley v. Fitzsimmons, 509 U.S. at 274 ("[W]e have found a common-law tradition of immunity for a prosecutor's decision to bring an indictment, whether he has probable cause or not.").

In Buckley v. Fitzsimmons, the Supreme Court stated that absolute immunity applies to "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury . . . ." 509 U.S. at 273. See Rex v. Teeples, 753 F.2d 840, 843 (10th Cir. 1985) ("[T]he determinative factor is 'advocacy' because that is the prosecutor's main function and the one most akin to his quasi-judicial role."). In Kalina v. Fletcher, the Supreme Court found such activities as drafting of the certification to the court, determining that the evidence justified a probable cause finding, deciding to file charges, presenting information, and making a motion to the court to be the work of an advocate, involving "the exercise of professional judgment." 522 U.S. at 130. See Burns v. Reed, 500 U.S. 478, 492 (1991) (instructing that the prosecutor's appearance at the hearing was "intimately associated with the judicial phase of the criminal process") (quoting Imbler v. Pactman, 424 U.S. at 430).

In contrast, absolute immunity does not attach when a prosecutor is performing investigative

or administrative functions. See Buckley v. Fitzsimmons, 509 U.S. at 272-273. For example, in Rex v. Teeples, the United States Court of Appeals for the Tenth Circuit held that a prosecutor's assistance in obtaining evidence was not protected by absolute immunity because it was police related rather than part of the judiciary process. See 753 F.2d at 843-844. Similarly, in Day v. Morgenthau, 909 F.2d 75 (2d Cir. 1990), a prosecutor who directed the arrest of an accused man was not protected by absolute immunity because he had engaged in a police-related rather than judicial function. See id. at 78. The United States Court of Appeals for the Second Circuit in Day v. Morgenthau reasoned that police functions "do not become prosecutorial functions merely because a prosecutor has chosen to participate." Id.

Other activities held to fall outside of the protections of absolute immunity because of their distance from the judicial process include making statements to the media, see, e.g., Buckley v. Fitzsimmons, 509 U.S. at 277, and giving legal advice to police, see, e.g., Burns v. Reed, 500 U.S. 478, 497 (1991). Specifically, in Burns v. Reed, the Supreme Court held that only qualified immunity protected a prosecutor offering legal advice to police concerning the proper manner in which to conduct an investigation. Because the police in that case would have enjoyed only qualified immunity for their actions, the Supreme Court reasoned that "it is incongruous to allow prosecutors to be absolutely immune from liability for giving advice to the police, but to allow police officers only qualified immunity for following the advice." Burns v. Reed, 500 U.S. at 495. In short, the further removed a prosecutor's activities become from the judicial process, the less likely it is that absolute immunity will protect those activities.

A prosecutor's motives for acting are irrelevant under the functional analysis of absolute immunity. See Cleavinger v. Saxner, 474 U.S. 193, 200 (1985). In Cleavinger v. Saxner, the

Supreme Court discussed judicial immunity, explaining, "[n]or can this exemption of the judges from civil liability be affected by the motives with which their judicial acts are performed." Id. at 200 (internal quotes omitted). The Supreme Court then explained that such immunity applies to state and federal prosecutors as well. See id.

Martinez v. Winner is instructive on this point. See Martinez v. Winner, 771 F.2d 424 (10th Cir. 1985), modified in part, 778 F.2d 553, cert. granted, 475 U.S. 1138 (1986) (vacating and remanding on other grounds). The Tenth Circuit in Martinez v. Winner initially held that immunity did not protect a prosecutor who lied and submitted false affidavits after the conclusion of a trial. On petition for rehearing, however, noting a factual error, the Tenth Circuit realized that the prosecutor's filings had been made in the course of her duties as a prosecutor rather than in a subsequent disciplinary proceeding. See 778 F.2d at 555. As a result, the Tenth Circuit affirmed the grant of absolute prosecutorial immunity. See id. at 556. The Tenth Circuit held that prosecutors were immune, despite "grossly improper" conduct, which included a "meeting of the judge and prosecutors to discuss the government's strategy." 771 F.2d at 437. Even more significantly, the Tenth Circuit concluded that an indictment and prosecution "on charges that [prosecutors] knew or should have known were false," id., and the prosecutors' failure "to make any independent inquiry or investigation regarding charges," id., were within the scope of prosecutorial immunity, see id. at 437-38. The final result of Martinez v. Winner illustrates that the question of absolute prosecutorial immunity does not turn on the impropriety of a prosecutor's acts, but rather on the nature of those acts and whether they are a part of the prosecutor's role as an advocate.

Explaining the basis of absolute immunity, the Tenth Circuit has stated:

Absolute immunity serves the important public policy goal of protecting officials

> performing important discretionary governmental functions from the threat of civil liability that may disrupt the decision making process: "When officials are threatened with personal liability for acts taken pursuant to their official duties, they may well be induced to act with an excess of caution or otherwise to skew their decisions in ways that result in less than full fidelity to the objective and independent criteria that ought to guide their conduct."

Spielman v. Hildebrand, 873 F.2d 1377, 1381 (10th Cir. 1989)(quoting Forrester v. White, 484 U.S. 219 (1988)).  Prosecutors depend on wide discretion in preparing and conducting their cases, choosing witnesses, and presenting evidence.  See Imbler v. Pachtman, 424 U.S. at 426. Furthermore, "the ultimate fairness of the operation of the system itself could be weakened by subjecting prosecutors to § 1983 liability." Id.  For example, a prosecutor's possible amenability to civil suit might improperly color a decision in those post-trial procedures that are in place to assure that defendants receive a fair trial.  See id.  In addition, the specter of civil liability might induce a prosecutor to suppress evidence "suggestive of innocence or mitigation." See id.  Absolute immunity therefore protects prosecutors when they are acting as advocates.

It is important to note that the inability to impose civil liability on prosecutors does not mean that prosecutors may behave capriciously, maliciously, improperly, or incompetently and yet remain beyond the reach of any adverse consequences.  Certain acts, for example, could subject a prosecutor to criminal liability or to "professional discipline by an association of his peers."  Id. at 429.  These and other similar mechanisms help insure that prosecutors are deterred from improper conduct, while immunity from civil liability allows them the discretion necessary to properly carry out their prosecutorial duties.

## LEGAL STANDARD FOR MOTIONS TO DISMISS

In determining a question of immunity, the court must accept the plaintiff's allegations as true.

See Buckley v. Fitzsimmons, 509 U.S. at 261. Dismissal is a severe and disfavored remedy, and the court may invoke this remedy only when there is no conceivable way for a plaintiff to prove a claim under the facts articulated in the complaint. See Poole v. City of Otero, 271 F.3d 955, 957 (10th Cir. 2001). "Dismissal of a complaint pursuant to rule 12(b)(6) is appropriate if it appears beyond any doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Sutton v. Utah State Sch. for Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999) (internal quotes omitted).

## ANALYSIS

The Court will grant the motion to dismiss, because Martinez was acting within his prosecutorial function. Under the Supreme Court's functional analysis, a prosecutor who is acting as an advocate or performing duties associated with judicial proceedings is not amenable to civil suit. See Buckley v. Fitzsimmons, 509 U.S. at 272-273. The decision to file charges and the initiation and pursuit of prosecution are part of a prosecutor's function as an advocate. See Kalina v. Fletcher, 522 U.S. at 126; Buckley v. Fitzsimmons, 509 U.S. at 274. To defeat Martinez' immunity as a prosecutor, Caputo must show that the alleged acts were investigative or administrative in nature, or in some other way beyond the scope of the judicial process. See id. at 272-273, 277.

Caputo makes two principal allegations against Martinez. First, he contends that Martinez allowed a prosecution to proceed against him even though no reasonable prosecutor could have believed that probable cause existed. See Response at 6. Second, he asserts that Martinez threatened to reinstate the charges after they were dropped if Caputo did not help with Martinez' political campaign. See id. Neither claim defeats absolute immunity.

With respect to the allegation that Martinez allowed the prosecution to proceed, immunity

bars any civil action against Martinez for this activity, because it is part of the prosecutor's role as an advocate. See Kalina v. Fletcher, 522 U.S. at 126. Martinez' decision to allow the officers working under him to pursue the prosecution was no different than making a decision to initiate a prosecution against Caputo. In either case, the decision would be an "exercise of [the prosecutor's] professional judgment" because it would entail the prosecutor making a determination that enough evidence exists for the prosecution to proceed. Kalina v. Fletcher, 522 U.S. at 130. Martinez had a right to exercise that judgment in determining whether to allow prosecution against Caputo, and by doing so he was acting within his function as a prosecutor.

Moreover, even if Martinez knew that no probable cause existed that warranted continued prosecution, the Court would still dismiss Caputo's claim against Martinez. See Martinez v. Winner, 771 F.2d at 437-438. Immunity protected the prosecutors in Martinez v. Winner for filing charges that they "knew, or should have known were false." Id. at 437. Caputo has argued that Martinez allowed charges to be brought against him even though no reasonable prosecutor could have believed that probable cause existed. See Response at 6. Knowingly allowing charges to be filed where no probable cause exists is equivalent, if not less extreme, than pursuing knowingly false charges, and it involves the exercise of professional judgment. It is therefore afforded the same immunity from civil suit.

Although Caputo has accused Martinez of what is arguably grossly improper conduct, including use of a prosecution for political gain, immunity still protects Martinez, because his activities were part of the judicial process. Caputo's allegations are similar to the conduct that the Tenth Circuit discussed in Martinez v. Winner, 771 F.2d at 437. In Martinez v. Winner the prosecutors had submitted false affidavits and had met with the judge to discuss the government's

case against the accused -- all conduct that the Tenth Circuit characterized as "grossly improper." Id. Despite the impropriety of that conduct, it was protected, because it occurred as part of the judicial process. See 778 F.2d at 555-556. The improper conduct that Caputo alleges, which includes allowing baseless charges to be filed, permitting prosecution to proceed without probable cause, and using his office for political gain, represents the initial phases of the judicial process, and immunity therefore protects these activities.

Caputo's second contention, that Martinez improperly threatened to reinstate dropped charges if Caputo did not support his political campaign, even if taken as true, does not overcome Martinez' immunity. The prosecutor's motive for filing charges does not bear on the functional analysis. See Cleavinger v. Saxner, 474 U.S. 193, 200. Martinez' alleged political motives are therefore not a basis for defeating absolute immunity.

Moreover, the threat to reinstate charges is essentially a threat to perform a function that the prosecutor has a right to perform. See Buckley v. Fitzsimmons, 509 U.S. at 274 ("We have found a common-law tradition of immunity for a prosecutor's decision to bring an indictment, whether he has probable cause or not."). Because the decision to bring charges is a traditional part of a prosecutor's role as advocate, regardless of the existence of probable cause, Martinez cannot be subject to civil liability for exercising that decision. Other safeguards must be relied on to protect against misuse of the prosecutorial function. See Imbler v. Pachtman, 424 U.S. at 429 (noting that some safeguards include criminal liability and professional discipline).

Caputo cites Kalina v. Fletcher for the proposition that a prosecutor filing certification for probable cause is not entitled to immunity, because filing certification is not part of his role as an advocate. See Response at 5. This proposition, while true, does not impact this case's outcome.

In Kalina v. Fletcher, the prosecutor submitted an affidavit summarizing the evidence in the case and personally vouching for its truthfulness. See 522 U.S. at 121. The act of filing certification and vouching for the truthfulness of the evidence "is the function of the witness, not of the lawyer." Id. at 130. Absolute immunity is not afforded to such activity. See id. Caputo has not alleged that Martinez acted as a witness or in any way vouched for the truthfulness of the evidence in Caputo's prosecution. The claims against Martinez are that he allowed the prosecution to proceed and threatened to re-file charges. Neither of those activities implicates Martinez as a witness or as someone who has vouched personally for the truthfulness of the charges brought against Caputo.

Caputo argues that a prosecutor acting "outside the scope of his authority . . . is entitled to no immunity at all." Response at 6. Caputo, however, has not been able to show that Martinez acted outside his authority as a prosecutor. The authority upon which he relies for this point is inapposite. Marrero v. Hialeah, 625 F.2d 499 (5th Cir. 1980), which involved a prosecutor making false statements to the media, has no bearing on this case because that public relations activity has no connection to advocacy or the judicial process. See id. at 506. Kijonka v. Seitzinger, 363 F.3d 645 (7th Cir. 2004), and Johnson v. City of Meridian, 23 F. Supp. 2d 681 (S.D. Miss. 1998), both involve prosecutors ordering the arrest of the accused. Absolute immunity does not protect such activity, because it is more closely associated with administration and investigation than with advocacy. See id. at 684. There is no allegation that Martinez ordered Caputo's arrest or interrogation, or that he performed any similar administrative or investigative function. Martinez' allegedly wrongful activities were part of the judicial rather than investigative process and therefore do not fall outside of the sphere of absolute immunity.

Caputo's argument that absolute immunity does not extend to actions that the prosecutor

takes for personal benefit similarly lacks a firm basis in the law, and his reliance on Martinez v. Winner for this point is problematic given that the Tenth Circuit modified the opinion on the point upon which Caputo relies. See Martinez v. Winner, 778 F.2d at 555-56. If anything, the decision in Martinez v. Winner supports Martinez' claim for prosecutorial immunity, because it clarified that the result turned not upon the impropriety or illegality of the prosecutor's acts, but rather on whether those acts were part of the prosecutor's role as an advocate. See id. at 555-556. Ultimately, the assertion that Martinez acted outside the scope of the judicial phase because he was seeking political gain improperly commingles motive with function, and the Supreme Court has determined that the inquiry with respect to absolute immunity is into the function, *not* the motives, of the prosecutor. See Buckley v. Fitzsimmons, 509 U.S. at 271.

Caputo also cites Ryland v. Shapiro, 708 F.2d 967 (5th Cir. 1983), in support of his argument that prosecutors are not immune from activities taken for personal benefit. See Response at 5. That case, however, is distinguishable on its facts, because it involved prosecutors who were attempting to cover up a murder and falsify a death certificate. See Ryland v. Shapiro, 708 F.2d at 975. Such activity, rather than being part of the judicial process, was an attempt to tamper with evidence and witnesses. Those activities therefore implicated investigative, police-related activities rather than the judicial process. See id. Furthermore, Ryland v. Shapiro did not base its ruling on motives, but rather on the fact that the prosecutors' wrongful acts, which included an attempt to cover up a murder, were "actions performed outside their role as prosecutors." Id.

Martinez is absolutely immune from Caputo's damage claims pursuant to the doctrine of prosecutorial immunity. See Imbler v. Pachtman, 424 U.S. at 420. Martinez cannot be held liable for malicious prosecution. Consequently, the Court will dismiss with prejudice Caputo's claims

against Martinez.

**IT IS ORDERED** that the Defendant's Motion to Dismiss is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Herbert M. Silverberg
Mary Louise Boelcke
Silverberg Law Offices
Albuquerque, New Mexico

> *Attorneys for the Plaintiff*

Randy S. Bartell
Montgomery & Andrews PA
Santa Fe, New Mexico

> *Attorneys for Defendants City of Rio Rancho
>     Department of Public Safety, J. Melton, and
>     Michel Baker*

Sean Olivas
Keleher & McLeod, P.A.
Albuquerque, New Mexico

> *Attorneys for Defendant Lemuel Martinez*